UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| BRIAN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 6:09-CV-00074-LSC |
| | ) |
| STANLEY WEBB, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion to dismiss, which was filed by the defendant, Sheriff Kevin Williams, on April 22, 2009.  (Doc. 23.) Plaintiff Brian Jones sued Sheriff Williams and Deputy Stanley Webb in their individual capacities for false arrest and use of excessive force under 42 U.S.C. § 1983 ("§ 1983").  (Doc. 1.)  Sheriff Williams moved to dismiss Plaintiff's claims against him on the grounds of qualified immunity.  Plaintiff has been given an opportunity to review Sheriff Williams's arguments in support of dismissal and file an amended complaint.  (Docs. 18, 20, 21.)

The issues raised in the motion to dismiss have been fully briefed by

the parties and are now ripe for decision.  Upon due consideration and for the reasons stated herein, the motion will be granted.

II.    Facts.[1]

On or about January 16, 2007, plaintiff Brian Jones pulled over on the side of a road to collect his dog, which had been hit by a car not far from his home.  After pulling over, a law enforcement vehicle with flashing lights parked behind him.  Deputy Webb approached Jones's vehicle and asked for his driver's license.  As Jones gave Deputy Webb his license, he explained he was getting his dog.  Deputy Webb asked Jones if he had been drinking.  Jones told him he had two sips of wine earlier in the evening.  Deputy Webb told Jones to get out of his vehicle, step to the edge of the road, lean his head back, and touch his fingers to his nose.

At about this time, Jones's wife and son pulled up to the scene, got out of their vehicle, and asked what was happening.  According to Jones, Deputy Webb became angry and shouted at his wife and son to get their "god damn asses back in the fucking vehicle."  Jones told Deputy Webb not

---

[1]For the purposes of this opinion, the facts are accepted as alleged in the First Amended Complaint.  (Doc. 21.)  Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true.

to talk to his wife that way, and Deputy Webb grabbed Jones and threw him on the ground.  Deputy Webb then got on Jones's back, grabbed and twisted his left arm, and began hitting him in the head, neck, and back with a flashlight while screaming at Jones to give him his other arm and calling him a "son of a bitch."  Jones maintains that his right arm was pinned under his body and he could not move it.  Deputy Webb subsequently rolled Jones onto his back, got on top of him again, hit him in the face and head, and started to choke Jones with the flashlight until he came close to losing consciousness.

Other officers pulled up to the scene, and Deputy Webb screamed for them to "taze" Jones.  While the officers dragged Jones to the police vehicle, Deputy Webb kicked him in the hips and lower back.  Jones contends that after the beating, he could not feel his legs and could not walk; both of his eyes swelled almost completely shut; and he had knots all over his head, bruises all over his body, a swollen elbow, and back and neck pain.  He maintains that the beating aggravated pre-existing neck and back problems.

Jones was arrested and charged with DUI, second degree assault, and

resisting arrest.  Jones alleges that Sheriff Williams had knowledge of Deputy Webb's propensity for using excessive force and making false arrests, and failed to investigate complaints against Deputy Webb regarding the same.

II.   Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level,  on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65

(2007) (internal citations omitted).[2] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the

---

[2]The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*. *See Bell Atl. Corp.*, 127 S.Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S.Ct. at 1960.

court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir. 1997).

III.   Discussion.

Sheriff Williams contends that Plaintiff's § 1983 claims against him in his individual capacity are due to be dismissed because he is entitled to qualified immunity and the First Amended Complaint fails to meet the heightened pleading standard.  (Docs. 23, 24.)  When confronted with a motion to dismiss on the basis of qualified immunity, the Eleventh Circuit Court of Appeals imposes a "heightened pleading requirement" on plaintiffs. *See GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).  While Federal Rule of Civil Procedure 8 allows a plaintiff leeway in framing his complaint, the Eleventh Circuit "has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *Id.* (citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir.1989))). The heightened pleading

standard requires "[s]ome factual detail in the pleadings . . . to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right." *GJR Invs., Inc.*, 132 F.3d at 1367. "We will dismiss a complaint under the heightened pleading standard where the allegations are 'vague and conclusory.'" *Danley v. Allen*, 540 F.3d 1298 1314 (11th Cir. 2008).[3]

"Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." *Id.* (quoting *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or

---

[3]Plaintiff uses nearly half of his opposition memorandum to argue that the Eleventh Circuit's heightened pleading standard conflicts with decisions of the U.S. Supreme Court issued in 1993, 1998, and 2002. (Doc. 25 at 2-6.) However, he concedes that in *Danley v. Allen*, 540 F.3d 1298, 1313-14 (11th Cir. 2008), the Eleventh Circuit reaffirmed that the heightened pleading standard is the law of this circuit with regard to § 1983 cases against officials able to assert qualified immunity as a defense. (Doc. 25 at 6.) This Court is bound by that decision.

when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.* (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

"The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (quoting *Brown*, 906 F.2d at 671). "A plaintiff can also establish the necessary causal connection by showing facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so, or that a supervisor's custom or policy . . . resulted in deliberate indifference to constitutional rights." *Id.* (internal quotations omitted). The Eleventh Circuit "has long recognized that supervisors are liable for . . . their employees where the supervisors received numerous reports of prior misconduct of that nature by those same

employees and did nothing to remedy the situation." *Id.* at 1315; *see also Williams v. Santana*, 2009 WL 2435053 (11th Cir. Aug. 11, 2009).

Plaintiff has not alleged that Sheriff Williams instructed his officers to commit constitutional violations or individually participated in the misconduct at issue. Instead, he argues that Sheriff Williams is "liable for creating an informal policy or custom of excessive force [and false arrest] by not responding properly to known incidents of excessive force [and false arrest]." (Doc. 25 at 7.) Sheriff Williams contends that the claims against him should be dismissed because the allegations in the First Amended Complaint are "conclusory, nonspecific, speculative, [and] fail[] to aver any specific facts" showing he had knowledge of prior instances when Deputy Webb used excessive force or made false arrests. (Doc. 24 at 8.) The Court agrees.

The First Amended Complaint includes allegations that Deputy Webb was involved in prior incidents where he used "excessive force," made "false arrests," or engaged in other unnamed misconduct. (Doc. 21 ¶¶ 26, 28.) It is further alleged that Deputy Webb "violated citizen rights while employed by a prior law enforcement agency" (*Id.* ¶ 27), and "complaints"

were made about "suspicious incidents involving him" (*Id.* ¶ 29). The First Amended Complaint also includes assertions that Sheriff Williams had knowledge of, and refused to investigate or take other action regarding, these "incidents" or "complaints." (*Id.* ¶¶ 27, 28, 29.) These allegations, however, are nothing more than labels and conclusions; they do not include "sufficiently specific facts to establish the necessary causal connection between [Sheriff Williams] and the alleged unconstitutional conduct of [Deputy Webb on January 16, 2007]." *Danley*, 540 F.3d at 1315.

The closest Plaintiff comes to including a specific fact regarding knowledge of prior conduct is the allegation Sheriff Williams "ignored and refused to investigate complaints and other information, including a disproportionate number of injuries to arrestees, a disproportionate number [of] serious injuries to arrestees, and a disproportionate number of resisting arrest charges." (*Id.* ¶ 28.) However, this assertion does not give the Court any information where the injuries to arrestees came from. Were the injuries the result of officer violence? Were they the result of Deputy Webb's violence? Were they self-inflicted, the result of domestic disputes, or suffered by individuals arrested after a bar brawl? Officer violence would

support a conclusion of the type of excessive force alleged in this case; the latter instances would not.

Plaintiff argues that the Eleventh Circuit's decision in *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), "makes it clear that [his] allegations are sufficient." (Doc. 25 at 9.) Plaintiff's counsel also drafted the complaint in *Danley*, and he contends that similar supervisory liability allegations were made in that case. In *Danley*, however, the plaintiff alleged that jailers' inappropriate use of pepper spray on him constituted excessive force. He alleged that two supervisors "had knowledge through 'force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation' that jailers at the Lauderdale Detention Center 'regularly used pepper spray excessively as a means of punishment and not for legitimate reasons.'" 540 F.3d at 1315. "The complaint also allege[d] that through the same sources, [the supervisors] were aware that jailers at the detention center 'regularly denied inmates prompt and adequate ventilation, decontamination, and medical care following pepper spray discharge as a means of punishment and not for legitimate reasons.'" *Id*. Unlike the First Amended Complaint

in this case, the *Danley* complaint gives a factual basis for the supervisors' knowledge; it tells the Court who complained and how those reports were made. The *Danley* complaint makes it clear that the type of excessive force alleged—using pepper spray excessively and then denying prompt and adequate ventilation, decontamination, and medical care—was a regular occurrence. *Danley* also included the allegation that the supervisors "did not discipline known incidents, and did not conduct additional training despite knowledge that pepper spray was being improperly used on a regular basis by jailers and that inmates were being denied proper treatment after spraying incidents." *Id*. And, the *Danley* complaint specified that the supervisors "were aware of numerous such incidents on the shift on which [the jailers at issue] worked. Nevertheless, the jailers engaging in this pattern of abuse were not disciplined for their actions or provided with additional training." *Id*. (internal quotations omitted).

According to the Eleventh Circuit, the *Danley* complaint included sufficiently specific facts, though they were not detailed. *Id*. The factual specificity of *Danley*, however, is not present in this case. There are no facts showing that Sheriff Williams was aware that Deputy Webb, or any of

the other officers, had a propensity for violence or used violence with citizens or arrestees numerous times or on a regular basis. Instead, the Court is asked to speculate about "complaints" and "suspicious incidents." Plaintiff also does not include any specific facts supporting the claim that Sheriff Williams had knowledge of numerous instances where Deputy Webb or any other officer made arrests in situations lacking probable cause. Because the allegations needed to establish the necessary causal connection between Sheriff Williams and the purported unconstitutional conduct Deputy Webb are vague and conclusory, Plaintiff has failed to state a claim for supervisory liability. Therefore, all claims against Sheriff Williams in his individual capacity are due to be dismissed.

IV. Conclusion.

For the reasons stated above, the motion to dismiss filed by Sheriff Williams will be granted. A separate order will be entered.

Done this 24th day of August 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297